UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| ScanSource, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | C/A No.: 6:11-cv-00382-GRA |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| Mitel Networks Corp., | ) | (Written Opinion) |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter comes before the Court on Defendant's Motion to Dismiss and Plaintiff's Motion for Jurisdictional Discovery.  A hearing was held on June 21, 2011, and both parties have submitted various filings in support of their positions. For the reasons stated below, this Court determines it may not exercise personal jurisdiction over Defendant, and it directs the Clerk of Court to transfer the case to the Southern District of Florida.

## BACKGROUND

### I.  Parties

Plaintiff ScanSource, Inc. ("ScanSource") is a South Carolina corporation. Defendant Mitel Networks Corporation ("Mitel") is a Canada corporation.  The underlying case involves a contract (the "Distributor Agreement") between Mitel and Netpoint International d/b/a ScanSource Latin America ("Netpoint"), a wholly owned Florida subsidiary of ScanSource, for the distribution of Mitel products in Mexico. ScanSource claims this Court has jurisdiction over Mitel through its subsidiaries,

Page 1 of 15

Mitel Technologies, Inc. ("MTI") and Mitel Networks, Inc. ("MNI"), both of which have significant ties to South Carolina.

## II. Procedural History

ScanSource filed this action in the Court of Common Pleas for Greenville County, South Carolina.  Mitel removed to this Court under 28 U.S.C. § 1441 (2006) and filed a motion to dismiss for failure to satisfy South Carolina's Door Closing Statute, S.C. Code Ann. § 15-5-150 (2005); for lack of personal jurisdiction; and for improper venue.  ScanSource then filed an amended complaint,[1] and Mitel renewed its Motion to Dismiss, arguing lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, and failure to satisfy the Door Closing Statute.  ScanSource filed a Response in Opposition to Mitel's Motion to Dismiss and, alternatively, moved for jurisdictional discovery.  Mitel filed a Reply in support of its Motion to Dismiss and a Response in Opposition to ScanSource's Motion for Jurisdictional Discovery.[2]

---

[1]    ScanSource made claims of breach of contract entitling it to damages and to a declaration terminating the contract and excusing future performance, breach of contract accompanied by fraudulent act, willful unfair trade practices, actual fraud, constructive fraud, and fraud in the inducement of performance.  In its original complaint, ScanSource made these claims based on a purported assignment by Netpoint of all of Netpoint's claims against Mitel.  In its amended complaint, ScanSource also asserted these claims directly on its own behalf.

[2]    ScanSource also filed a Reply to Mitel's Response in Opposition to the Motion for Jurisdictional Discovery; however, the Reply was untimely under Local Civil Rule 7.06 DSC.

Meanwhile, Mitel sued Netpoint in Florida over the non-payment of Netpoint's outstanding balance under the Distributor Agreement.  That action is now pending in the Southern District of Florida (C/A No. 1:11-cv-20517-JEM).

### STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant has moved to dismiss for lack of personal jurisdiction.  "When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence."  *Mylan Labs., Inc. v. Azko, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).  "Yet when, as here, the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction."  *Id.* at 60 (citing *Combs*, 886 F.2d at 676).  The district court must resolve all factual disputes and draw all reasonable inferences arising from the proof in favor of the plaintiff.  *Id.*  However, the Court must also consider evidence provided by the defendant in support of its motion.  *Harris v. Option One Mortg. Corp.*, 261 F.R.D. 98, 109 (D.S.C. 2009) (citing *Mylan*, 2 F.3d at 62 ("[T]he district court correctly looked both to [the plaintiff's] and to [the defendant's] proffered proof in ruling upon [the defendant's] motion.")).

## DISCUSSION

### I. Personal Jurisdiction

"[I]n the absence of a federal rule or statute establishing a federal basis for the assertion of personal jurisdiction, the personal jurisdiction of the district courts is determined in diversity cases by the law of the forum State." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 711 (1982) (Powell, J., concurring).  Therefore, in this diversity action, the Court applies South Carolina law in determining whether it has personal jurisdiction over Defendant.  Determining whether a court's jurisdiction over a defendant is proper begins by "(1) determining if the state's long-arm statute confers jurisdiction and (2) whether the exercise of jurisdiction, if authorized [by the state's long-arm statute], is consistent with the Due Process requirements of the Fourteenth Amendment." *Harris*, 261 F.R.D. at 109. Because South Carolina's long-arm statute has been interpreted to extend personal jurisdiction to the "full reach of Due Process," courts analyzing personal jurisdiction under South Carolina law focus their inquiry on whether exercising personal jurisdiction is consistent with Due Process.  *Id.*; *see also In re Celotex Corp.*, 124 F.3d 619, 627−28 (4th Cir. 1997).

As a matter of due process, "[p]ersonal jurisdiction exists where a defendant has 'minimum contacts' with the forum 'such that . . . maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639, 644 (D.S.C. 2005) (quoting *Lesnick*

*v. Hollingsworth & Vose Co.*, 35 F.3d 939, 942 (4th Cir. 1994) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))).  These contacts must sufficiently demonstrate that the defendant is subject to either specific or general jurisdiction in South Carolina.  *Id.* at 644; *Harris*, 261 F.R.D. at 109.

### A. Specific Jurisdiction

The Court does not have specific jurisdiction over Mitel.  "With respect to specific jurisdiction, '[t]he touchstone . . . remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state.'" *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (quoting *Lesnick*, 35 F.3d at 945).  "The contacts related to the cause of action must create a 'substantial connection' with the forum state, . . . . [and] the defendant's actions must be directed at the forum state in more than a random, fortuitous, or attenuated way." *Id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("[A] defendant will not be haled into a jurisdiction solely as a result of 'random,' fortuitous,' or 'attenuated' contacts . . . ." (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984))).  And, "[a]lthough it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the [Supreme] Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King*, 471 U.S. at 474 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)); *see also ESAB*, 126

F.3d at 626 (holding that "[a]lthough the place that the plaintiff feels the alleged injury is plainly relevant to the [specific jurisdiction] inquiry, it must ultimately be accompanied by the defendant's own contacts with the state," and finding there was no *in personam* jurisdiction "[b]ecause those contacts in this case were too attenuated and insubstantial to provide a constitutionally sufficient basis for South Carolina courts to exercise . . . jurisdiction").

ScanSource has not alleged that the contract at issue in this case was made or executed in South Carolina.  Both parties agree that all acts involved in the underlying suit took place outside of South Carolina.  ScanSource's only claims in support of specific jurisdiction are that it was injured in South Carolina by Mitel's acts towards Netpoint and that Mitel phoned ScanSource in South Carolina once to discuss a settlement in this case.

A single phone call, especially one made for purposes of settlement, is not sufficient to establish specific jurisdiction over a defendant. *See CEM Corp. v. Pers. Chemistry, AB*, 55 F. App'x 621, 624 (4th Cir. 2003) (unpublished) (per curiam) (refusing to consider a settlement agreement between the parties as sufficient to subject the foreign defendant to specific jurisdiction in the forum state).  And ScanSource's claim of injury through its Florida subsidiary, Netpoint, regarding a contract over the distribution of products in Mexico is likewise far too attenuated to establish specific jurisdiction over Mitel.  Accordingly, ScanSource has failed to establish the Court's specific jurisdiction over Mitel.

Page 6 of 15

### B. General Jurisdiction

General jurisdiction applies to defendants who have purposefully established "continuous and systematic" contacts in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Due Process precludes the exercise of general jurisdiction unless the plaintiff shows that the defendant has an "enduring relationship" with the forum state. *Dtex*, 405 F. Supp. 2d at 644 (citing *Brown v. Geha–Werke GmbH*, 69 F. Supp. 2d 770, 779 (D.S.C. 1999)); *Coggeshall v. Reprod. Endocrine Assocs. of Charlotte*, 655 S.E.2d 476, 479 (S.C. 2007) ("[G]eneral jurisdiction is based upon 'an enduring relationship' with the State."). Because general jurisdiction justifies suit against a defendant on any cause of action, including one totally unrelated to the defendant's contacts with South Carolina, the defendant must have truly significant, meaningful contacts with the State. *See Cockrell v. Hillerich & Bradsby Co.*, 611 S.E.2d 505, 510 (S.C. 2005) ("These contacts must be 'so substantial and of such a nature as to justify suit against [the respondents] on causes of action arising from dealings entirely different from those activities.'") (quoting *Int'l Shoe Co.*, 326 U.S. at 318)).

### Jurisdiction Based on Mitel's Direct Contacts

ScanSource has not established that this Court may exercise general jurisdiction over Mitel based on Mitel's direct contacts with South Carolina. According to the amended complaint, Mitel's only contacts with South Carolina have been a teleconference with ScanSource to discuss settlement options in this case

Page 7 of 15

and some emails exchanged with ScanSource regarding a completely unrelated contract between ScanSource and MNI.  In support of its Motion to Dismiss, Mitel provided the affidavit of Todd Richardson, the Vice President of Finance & Corporate Controller of Mitel.  According to Mr. Richardson, Mitel is a Canada corporation; its principal place of business is in Ontario, Canada; it does not do business in South Carolina; and it is not licensed to do business in South Carolina.  (Mot. to Dismiss, Ex. 3, ¶ 3, ECF No. 17-5.)  These scarce direct contacts between Mitel and South Carolina do not provide sufficient basis for general jurisdiction over Mitel.

### *Jurisdiction Based on Mitel's Subsidiaries*

Additionally, ScanSource argues Mitel does business in South Carolina through its subsidiaries, MNI and MTI.  It is undisputed that MNI and MTI have entered into contracts in South Carolina, have agreed to be subject to South Carolina courts, maintain at least one office building in South Carolina, and do business with several South Carolina companies.  To support its allegations that Mitel "significantly controls the marketing and operating policies of its subsidiaries"; that Mitel and its subsidiaries "share common ownership, . . . are not financially independent, and . . . share executive personnel"; and that Mitel and its subsidiaries "act as alter egos" (Am. Compl. 6, ¶ 21, ECF No. 10), ScanSource relies on customer applications and purchase orders between ScanSource and MNI regarding a contract between ScanSource and MNI (the "MNI contract"), in which MNI listed Mitel's payment processing center address in Canada as MNI's address, (*id.*, Exs. B, E, G, ECF Nos.

10-2, 10-3, 10-7); emails between Mitel employees in Canada and ScanSource

employees over payment issues regarding the MNI contract (*id.*, Exs. H, I, ECF Nos.

10-8, 10-9); a screenshot of Mitel's Web site listing all its "partners," which include

businesses in several cities in South Carolina (*id.*, Ex. J, ECF No. 10-10); and a

contract Mitel signed to guaranty MNI in the MNI contract, in which the same

person who signed on behalf of Mitel signed on behalf of MNI (Resp. in Opp'n, Ex.

A, ECF No. 22-1).

For the reasons states below, this Court finds that both of ScanSource's

theories— piercing the corporate veil and agency—fail to support its assertion that

this Court may exercise jurisdiction over Mitel.

### *Piercing the Corporate Veil*

South Carolina law instructs courts not to "extend jurisdiction to the parent

based *solely* on the activities of a subsidiary where those activities are *unrelated to*

*the cause of action* and do not bear a substantial connection to the case at hand."

*Builder Mart of Am., Inc. v. First Union Corp.*, 563 S.E.2d 352, 358 (S.C. Ct. App.

2002) *overruled on other grounds by Farmer v. Monsanto Corp.*, 579 S.E.2d 325

(S.C. 2003).  "As the United States Supreme Court has explained, 'when the

"minimum contact" that is a substitute for physical presence consists of property

ownership it must, like other minimum contacts, be related to the litigation.'" *Id.*

(quoting *Burnham v. Super. Ct. of Cal.*, 495 U.S. 604, 620 (1990)) (emphasis

omitted).

Additionally, in order to establish the Court's general jurisdiction over a parent

company based on the activities of its subsidiaries, the plaintiff must plead or

demonstrate an adequate basis to pierce the corporate veil between the companies.

*Dtex*, 405 F. Supp. 2d at 647; *see also Gray v. Riso Kagaku Corp.*,No. 95-

1741,1996 WL 181488, at *3 (4th Cir. Apr. 17, 1996) (unpublished) (per curiam)

("[T]he mere fact that [the defendant's] subsidiaries do business in South Carolina

does not confer personal jurisdiction over [the defendant].").   To pierce the

corporate veil, the plaintiff must show the following:

> (1) whether the corporation was grossly undercapitalized;
> (2) failure to observe corporate formalities;
> (3) non-payment of dividends;
> (4) insolvency of the debtor corporation at the time;
> (5) siphoning of funds of the corporation by the dominant stockholder;
> (6) non-functioning of other officers or directors;
> (7) absence of corporate records; and
> (8) the fact that the corporation was merely a façade for the operations of the dominant stockholder.

*Mid-S. Mgmt. Co. v. Sherwood Dev. Corp.*, 649 S.E.2d 135, 140–41 (S.C. Ct.

App. 2007) (quoting *Dumas v. InfoSafe Corp.*, 463 S.E.2d 641, 644 (S.C. Ct. App.

1995)).

Piercing the corporate veil in order to subject a parent company to general

jurisdiction requires more than merely showing that the defendant failed to observe

some corporate formalities.  For example, in *Gray*, the court of appeals affirmed the

district court's decision to dismiss on the basis of jurisdiction even though the parent

company made the subsidiary terminate a financing program on which the parent

acted as a guarantor, a majority of the subsidiary's board of directors were also

associated with the parent company, the parent funded the subsidiary, and the

subsidiary relied on directions from the parent company to make hiring decisions and

resolve complaints.  *Gray*, 1996 WL 181488, at *3.  The *Gray* court explained that

> [a]lthough these facts demonstrate that [the defendant] failed to
> observe some corporate formalities, [the plaintiff] has not sustained
> his burden of proving that [the defendant] has minimum contacts
> with South Carolina. . . . [because] he has not proved that [the
> defendant] exerts a degree of control greater tha[n] what is normally
> associated with common ownership and directorship, or that [the
> subsidiary] is a separate entity in name alone.

*Id.* (citing *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 466 (1st Cir. 1990)).

The mere fact that Mitel, like other sophisticated parent companies, shares

administrative functions and some executives with its subsidiaries, guarantees its

subsidiaries, and has a Web site that lists its and its subsidiaries' business partners,

is not enough to subject it to this Court's general jurisdiction.  *See Builder Mart*, 563

S.E.2d at 358–59 (holding that "unified marketing and advertising and holding out to

the public as a single entity" are "insufficient to confer jurisdiction"); *Nat'l Prod.*

*Workers Union Trust v. CIGNA Corp.*, No. 05-C-5415, 2007 WL 1468555, at *10

(N.D. Ill. May 16, 2007) (noting that provision of support services, including advanced

costs, by parent for subsidiary, "are part and parcel of the normal incidents of a

parent–subsidiary relationship"); *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F.

Supp. 2d 411, 425 (E.D. Pa. 2005) (noting that where the subsidiary reimburses the

parent for the services, sharing services "such as human resources and information

technology services, and office space and infrastructure," does not indicate a lack of corporate formality); *Weiss v. La Suisse*, 69 F. Supp. 2d 449, 458 (S.D.N.Y. 1999) ("[T]he overlap of directors and officers between parent and subsidiary alone does not render the subsidiary a 'mere department' for jurisdictional purposes."). This conclusion is emphasized by the significant, uncontroverted fact that the activities by Mitel's subsidiaries are *completely unrelated* to ScanSource's claims. ScanSource has presented no evidence that Mitels' subsidiaries were parties to, participated in, or otherwise influenced the Distributor Agreement between Netpoint and Mitel.

Along with failing to show how Mitel has meaningfully failed to observe corporate formalities, ScanSource has also failed to support its allegation that Mitel's subsidiaries are merely façades for Mitel's operations. ScanSource has not provided any facts demonstrating that MNI or MTI were grossly undercapitalized, did not pay dividends, were insolvent, had their funds siphoned off by Mitel, had non-functioning officers or directors, or failed to maintain any corporate records. ScanSource has failed to carry its burden to pierce the corporate veil between Mitel and its subsidiaries.

### *Alter Ego/Agency*

ScanSource also asserts that Mitel's subsidiaries are its mere agents and, therefore, Mitel is doing sufficient business in South Carolina for it to be subject to this Court's jurisdiction. *See Arch v. Am. Tobacco Co.*, 984 F. Supp. 830, 837 (E.D. Pa. 1997) (listing "whether a subsidiary is a mere alter ego or agent of the parent"

as one factor used to determine if the court may impute the contacts of the subsidiary onto the parent company in order to establish jurisdiction).  To determine whether the subsidiary is functioning as a mere agent of the parent company, the courts look at four factors: "(1) common ownership, (2) financial independence, (3) degree of selection of executive personnel and failure to observe corporate formalities, *and* (4) the degree of control over marketing and operational policies."  *Builder Mart*, 563 S.E.2d at 358 (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

ScanSource has failed to show that Mitel controls its subsidiaries to such a degree that they are each other's mere alter egos.  The fact that Mitel and its subsidiaries share a payment processing center does not equate to Mitel and its subsidiaries failing to be financially independent of each other.  Likewise, the fact that they, like many companies, share executives does not establish that Mitel controls the selection of the executives.  *See Arch*, 984 F. Supp. at 837 ("'The degree of control exercised by the parent must be greater than normally associated with common ownership and directorship.'" (quoting *Savin Corp. v. Heritage Copy Prod., Inc.*, 661 F. Supp. 463, 469 (M.D. Pa. 1987))).  Finally, little, if any control, is exemplified by Mitel's serving as a guarantor to its subsidiary and having a Web site that lists all of its and its subsidiaries contacts.  These facts, even in combination, do not rise to a failure to observe corporate formalities.  If these facts were sufficient to confer jurisdiction over a parent company, virtually all parent companies could be hauled into every forum in which its subsidiaries did business.

Because ScanSource has failed to pierce the corporate veil or support its alter ego allegations, it has failed to establish that this Court has personal jurisdiction over Mitel.[3]

### III. Jurisdictional Discovery

Plaintiff has moved for jurisdictional discovery. This Court has "broad discretion" in resolving discovery problems. *Mylan*, 2 F.3d at 64. It also has a responsibility to resolve matters before it effectively and *efficiently*. *United States v. Dietz*, No. 94-5733, 1995 WL 133353, at *3 (4th Cir. Mar. 28, 1995) (unpublished) (per curiam) (finding "no abuse of discretion in the district court's summarily denying the motions [for disclosure of jury panel information and for discovery] in the name of judicial economy"). Plaintiff has not presented any evidence that Mitel does not observe corporate formalities, or that it controls its subsidiaries, to such a level as to subject it to the general jurisdiction of this Court. Allowing Plaintiff to conduct discovery would cost both parties time, money, and effort for what would merely delay the inevitable. Plaintiffs are therefore not entitled to jurisdictional discovery.

Having determined that personal jurisdiction is lacking, the next step is to dispose of the case appropriately. As an alternative to outright dismissal, Mitel has suggested that this case be transferred to the Southern District of Florida, where the

---

[3]    Because this Court cannot exercise personal jurisdiction over Defendant, it does not decide whether jurisdiction is proper under the Door Closing statute, whether venue is improper, or whether ScanSource's direct claims against Mitel fail to state a claim for relief.

Page 14 of 15

other action is pending, (Mem. in Supp. of Mot. to Dismiss 3 n.3, ECF No. 17-1;

Reply in Supp. 2, ECF No. 26).  Accordingly, this Court grants Mitel's request to

transfer the case.

IT IS THEREFORE ORDERED that the Clerk of Court TRANSFER this case to the

United States District Court for the Southern District of Florida.

**IT IS SO ORDERED.**

G. Ross Anderson, Jr.
Senior United States District Judge

June 24, 2011
Anderson, South Carolina

### NOTICE OF RIGHT TO APPEAL

Pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, both

parties have the right to appeal this Order within thirty (30) days from the date of its

entry.  Failure to meet this deadline, as modified by Rule 4 of the Federal Rule of

Appellate Procedure, **will waive the right to appeal**.